MATTHEWS v. MT. CARMEL MERCY HOSPITAL.

1. LABOR RELATIONS—GOVERNOR'S SPECIAL COMMISSION—FINDINGS.
   The findings of a special commission appointed by the governor at request of the State labor mediation board pursuant to provisions of the labor mediation act are not binding on the parties to the dispute (CLS 1956, § 423.13b).

2. SAME—HOSPITALS—COURTS.
   Judicial interference by way of injunction or otherwise may not be had in a labor dispute involving hospital employees prior to completion of the statutorily mandated steps of the labor mediation act (CLS 1956, §§ 423.13a–423.13g).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur, Labor § 368.
[2, 3] 31 Am Jur, Labor § 523 et seq.
[4] 14 Am Jur, Costs §§ 91, 96.
    28 Am Jur, Injunctions § 299.

3. SAME — HOSPITALS — INJUNCTION — LOCKOUT — LABOR MEDIA-
TION ACT — COLLECTIVE AGREEMENT.

Bill to enjoin alleged lockout of hospital boiler room employees
was properly dismissed by trial court, where procedural steps
were yet to be taken under the labor mediation act to resolve,
among other questions, who was to represent the employees
and applicability of the settlement procedure in the continuing
collective working agreement which had been in effect for sev-
eral years (CLS 1956, §§ 423.13a–423.13g).

4. COSTS—CONSTRUCTION OF STATUTE—LABOR DISPUTE—HOSPITALS.

No costs are allowed on appeal from dismissal of bill to enjoin
an alleged lockout of hospital boiler room employees, where
the construction of a statute is involved (CLS 1956, §§ 423.13a–
423.13g).

Appeal from Wayne; Culehan (Miles N.), J. Sub-
mitted October 8, 1963. (Calendar No. 5, Docket
No. 50,016.) Decided November 4, 1963.

Bill by William Matthews, Joseph R. Dunn, Jr.,
and Leon Schlachter against Mt. Carmel Mercy
Hospital, a Michigan nonprofit corporation, to en-
join lockout of them as employees. Bill dismissed.
Plaintiffs appeal. Affirmed.

*Dee Edwards,* for plaintiffs.

*Wurzer, Higgins & Starrs* (*John T. Higgins, John
R. Starrs,* and *Robert A. MacDonell*), for defend-
ant.

O'HARA, J. Appellants seek an interpretation of
the Michigan labor mediation act, PA 1939, No 176,
§§ 13a–13g, as added by PA 1949, No 230 (CLS 1956,
§§ 423.13a–423.13g [Stat Ann 1960 Rev §§ 17.454
(14.2)–17.454(14.8)]), as it applied to them in their
employment relationship with appellee hospital.
Difficulty attends decision under the statement of

questions involved as framed by the parties. Appellants assert they were "locked out" as prohibited by the act. Appellee contrariwise claims that appellant Dunn was discharged for cause, and that his co-workers and coappellants quit—or at least refused to return to work unless Dunn was rehired. The question, appellee claims, is whether it is required to rehire a discharged employee while proceedings before the labor mediation board impend.

A recitation of factual background is necessary to an understanding of the question we regard as determinative. In 1957, the employees of the boiler room of defendant hospital apparently became involved in a labor controversy with the hospital management. The dispute was certified to the governor by the following communication from the labor mediation board:

"November 12, 1957
"Honorable G. Mennen Williams, Governor
Executive Office
Capital Building
Lansing, Michigan
*"Dear Governor Williams:*
"Pursuant to section 13 (a) (b) of the Michigan labor mediation act, PA 1939, No 176, as amended, the labor mediation board herewith certifies to you as governor the dispute concerning recognition and wages, hours, and other terms and conditions of employment between the Mt. Carmel Mercy Hospital, Detroit, Michigan and Local 547, International Union of Operating Engineers, AFL-CIO.
"Representatives of the parties are:
"J. E. Crow, President
    "Local 547, Int'l Union of Operating Engineers, AFL-CIO
    Park Avenue Building, Room 408
    2011 Park Ave.
    Detroit 26, Michigan

"John J. Powers, Representing Mt. Carmel Mercy
    Hospital
"6071 West Outer Drive
Detroit, Michigan
"It is our recommendation that the special com-
mission be appointed now and begin its deliberations
at the earliest possible date.

"Very truly yours,
"/s/ Allan D. Chisholm,
"ADC/LJ                                Chairman"

The governor thereupon appointed a special com-
mission, as required by the statute:

"STATE OF MICHIGAN
Office of the Governor
Lansing
"G. MENNEN WILLIAMS
        Governor                November 25, 1957
"Mr. John J. Powers
Mount Carmel Mercy Hospital
6071 West Outer Drive
Detroit, Michigan
*"Dear Mr. Powers:*
"In accordance with section 13 (a) (b) of the
Michigan labor mediation act, PA 1939, No 176, as
amended, and by virtue of the authority vested in me
as governor, I have appointed a special commission
in the labor dispute between your organization and
Local 547, International Union of Operating Engi-
neers, AFL-CIO, represented by Mr. J. E. Crow,
president. The following 3 persons have been
named:
    "Dr. Mark L. Kahn, Chairman
        Wayne State University
        Department of Economics
        Detroit 2, Michigan
    "Reverend Donald V. Carey
        (Episcopal Minister & Pastor)
        Grace Church
        1815 Hall, S.E.
        Grand Rapids, Michigan

"Attorney Joseph E. Arsulowicz
  1000 McKay Tower
  Grand Rapids, Michigan
"Your full cooperation with the special commission will be appreciated.
                              "Sincerely,
                              "/s/ G. Mennen Williams
                                        Governor"

Thereafter, the representatives of the hospital and Local 507 met, and accord upon a contract was apparently reached. The International president sent the following letter to the governor's commission:

                                        "December 10, 1957
"Mr. Mark L. Kahn
Chairman of Governor Special Commission
*"Dear Sir:*
  "In discussion with Mr. Powers, of the Mt. Carmel Mercy Hospital, it has been agreed that the employer will sign an agreement covering the working conditions and wages at the Mt. Carmel Mercy Hospital for the power plant employees.
  "This agreement is to be signed by a representative of the power plant employees.
  "In addition to the above agreement, a petition will be signed by a majority of the power plant employees and filed in the office of Mr. Powers.
  "This petition shall stipulate that any grievance not settled satisfactorily between the power plant employees stewart [steward?] in the plant and the employer shall immediately at the request of either the employer or power plant employees, be turned over to Mr. Powers and Mr. Crow, who shall, if they see fit, *take the matter before the State Labor Mediation Board for final settlement.* (Emphasis supplied.)
  "The International Union of Operating Engineers, Local No. 547 is willing, at this time, to accept this plan as a working agreement with the Mt. Carmel

Mercy Hospital, and hereby requests the approval of the governor's special commission for this plan.

"Respectfully submitted,

/s/ "J. E. CROW
            President, International Union
                of Operating Engineers."

The agreement or contract, as it is relevant here, provided:

"1. *Job Security*

"Grievance Procedure: any employee of the boiler room having a grievance shall be entitled to present the same to the chief engineer, Ralph Berry, or his successor. When the grievance cannot be settled at the aforesaid level, the same shall be presented in writing to John J. Powers, public relations counsel, or his successor, who shall, with the administrator of the hospital, hear the complaint of the employee and render a decision within 15 days from the time the complaint is presented. When the grievance cannot be settled at the levels aforesaid, the same shall be presented to the Michigan State labor mediation board and the parties hereto shall have the right to be represented by any person or persons of their own choosing.

"2. The employees shall file with the employer, and the employer agrees to accept, a statement stating therein who shall represent them before the labor mediation board. * * *

"6. *Term of Agreement*

"This agreement will remain in effect until December 31, 1958, and will continue in effect from year to year thereafter unless written notice to amend or terminate shall be given by either party at least 30 days prior to December 31st of any year.

"FOR THE EMPLOYEES OF THE BOILER ROOM
    OF MOUNT CARMEL MERCY HOSPITAL

"By: WILLIAM T. MATTHEWS
"MOUNT CARMEL MERCY HOSPITAL
"By: JOHN J. POWERS."

The next event in consequential sequence was the employees designation of their representative. It is herewith set out:

"December 16, 1957

"Mr. John J. Powers
Public Relations Counsel
Mt. Carmel Mercy Hospital
6071 W. Outer Drive
Detroit, Michigan
"*Dear Mr. Powers:*
"This is to advise you that the employees, covered by the agreement, reached with the governor's special commission, December 10, 1957, wish to be represented by Mr. J. E. Crow, 408 Park Ave. Bldg., Detroit 16, Michigan.

"Whenever a disagreement arises between the Mt. Carmel Mercy Hospital and the power plant employees, covered by the above mentioned agreement, which cannot be settled between the chief engineer and yourself, then Mr. J. E. Crow will take over our representation.

"Will you please sign and return to us confirming copies of this letter.

"Very truly yours,
"FOR THE EMPLOYEES OF THE
BOILER ROOM OF THE MT. CARMEL
MERCY HOSPITAL
WM. T. MATTHEWS
"MT. CARMEL MERCY HOSPITAL
"JOHN J. POWERS."

The agreement remained in effect under the continuing renewal proviso. Neither party served a notice of termination nor intention to amend.

On July 12, 1961, appellant Dunn's employment with the hospital came to an end. Appellee contends he was discharged for "unconscionable conduct." Appellant urges that he was wrongfully discharged and he and his fellow employees "locked out." Whatever may be the correct version, it

appears that the grievance procedure was followed up to a point. The union negotiator agreed with the position of the defendant hospital and furnished replacements for appellants in their respective jobs. The employees sought further review and the controversy was certified to the governor by the labor mediation board. A special commission was again appointed and its findings and recommendations were sent to the labor mediation board. The findings of that commission were not made part of the record here, but it should be noted that by statute they are not binding upon the parties (CLS 1956, § 423.13b [Stat Ann 1960 Rev § 17.454 (14.3)]).

At some time not specified in the appendix, appellants retained counsel, who apparently represented them before the governor's commission, and who also represents them on this appeal.

On July 2, 1962, this attorney wrote the hospital charging an illegal lockout and demanding appellants' immediate reinstatement. On July 6, 1962, the labor mediation board wrote to the attorney and the hospital setting a mediation conference for July 12, 1962. The parties appeared and the employer objected to the representation by counsel on the ground that under that contract of December, 1957, which was still in effect, only Local 547 of the operating engineers could represent employees of the boiler room and posed the following question to the board by letter the day after the mediation meeting, July 13, 1962:

"It is the hospital's firm belief that they are bound by the contract between the parties. * * * Your determination of the * * * question as to the proper representative of these employees before the labor mediation board will be sincerely appreciated."

On the same date as the above letter was directed by the employer to the labor mediation board, appellants filed a bill of complaint in the circuit court and an order to show cause why injunctive relief should not be granted during the pendency of the action, restraining the defendants from the "unlawful lockout", *i.e.,* reinstating the appellants in their jobs from which they had been separated almost exactly a year before.

The return of the defendant, covering 29 pages of the 40-page appendix, recited most of the factual history hereinbefore set forth. The trial judge dismissed the bill of complaint and the show cause order without opinion. Clearly he was correct, but an opinion however brief, would have been helpful to us on review in particularizing the reasons.

The involved statute commits a labor controversy in any case involving hospital employees to the jurisdiction of the labor mediation board and specifies the procedure to be followed:

"In case of *any* labor dispute involving hospital * * * employees the following procedure *shall* be followed." (Emphasis supplied.)    CLS 1956, § 423.13a (Stat Ann 1960 Rev § 17.454 [14.2]), subd (1).

Subdivision (2) provides:

"Disputes for which a settlement procedure is provided in a collective agreement between a hospital * * * employer and a labor organization shall be handled in accordance with such procedure."

The statute outlines further steps in the event settlement does not result. Among the questions which remain unsettled on the record before us is that of employee representation and the applicability of the settlement procedure in the collective agreement. We would do violence to the statute

and the plain intention of the legislature were we to permit, by injunction or otherwise, judicial intervention in the field, unless and until the statutorily mandated steps were complete. For that reason, we affirm the trial court.

. No costs, construction of a statute being involved.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and SMITH, JJ., concurred.